James HOSIE, Plaintiff-Appellant,

v.

CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a corporation, Defendant-Appellee.

No. 12953.

United States Court of Appeals Seventh Circuit.

Sept. 28, 1960.

Joseph Barbera, Chicago, Ill., for appellant.

John H. Gobel and Edward Warden, Chicago, Ill., for appellee.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit for damages for personal injuries which plaintiff suffered when he was struck by one of defendant's trains on or near the intersection of the defendant's tracks with Hale Street and Chicago Avenue, in the Village of Palatine, Cook County, Illinois.

On the day before the trial, the District Court, on its own motion, severed the issue of damages from the issue of liability, acting under Rule 21 of the Civil Rules of the District Court for the Northern District of Illinois.[1] Both the plaintiff and defendant objected to the severance.

At the close of plaintiff's case, defendant moved for a directed verdict which motion was denied. Defendant then rested without offering any evidence. The issue of liability was submitted to the jury, and a verdict finding the defendant "not guilty" of negligence was returned. Judgment in favor of defendant was entered on the verdict.

Hale Street is unpaved south of the tracks and comes to a dead end about one block south of the intersection. North of the tracks, Hale Street is approximately 24 feet in width from curb to curb. South of the track the width of the travelled portion of the street is approximately 40 feet. On the east side of Hale Street and south of the tracks, there is a driveway which leads into the premises of the Hines Lumber Company. Also east of the crossing, a switch track runs in a southeasterly direction from which freight cars can be loaded into and unloaded from the Hines building.

Chicago Avenue is a paved street 30 feet 6 inches wide. A crossing gate is located at the southeast corner of the intersection and also on the northwest corner. A similar gate is located on Chicago Avenue west of the intersection

1. "Separation of Issues in Civil Suits. Pursuant to and in furtherance of Rule 42(b), Federal Rules of Civil Procedure, to curtail undue delay in the administration of justice in personal injury and other civil litigation wherein the issue of liability may be adjudicated as a prerequisite to the determination of any and all other issues, in jury and non-jury cases, a separate trial may be had upon such issue of liability, upon motion of any of the parties or at the Court's direction, in any claim, cross-claim, counterclaim or third-party claim."

which barricades the sidewalks as well as the street. The posts which support the gates are equipped with flasher lights.

Two main lines of railroad track cross the intersection at an angle of approximately 30 degrees; the northerly tracks are used for southeast bound trains, while the southerly tracks are utilized by northwest bound trains. The Palatine station of the railroad is located approximately 650 feet northwest of the intersection which has been hereinbefore described.

At the time of the occurrence, plaintiff was forty-three years of age, and was employed by Hines Lumber Company as a yard foreman at its Palatine branch. His duties were to see that freight cars brought into the Hines yard were properly loaded and unloaded. The work of unloading the cars was done by stevedores from Chicago. On the morning in question, stevedores were supposed to arrive at the Palatine station on the train due from Chicago at 7:35 a. m.

Plaintiff checked the cars that were on the Hines siding. In a pretrial statement, he stated that he walked to a point between the tracks and the Hines building, and then proceeded toward the switch stand which is some distance southeast of the crossing. He also said he did not again look to the southeast from which direction the train from Chicago would come. He stated that he came to a stop just west of the switch stand.

On the trial, however, plaintiff stated he was standing at the crossing about one foot distant from the south rail of the most southerly main track. He saw a southeast bound train pass by on the parallel track and waved to the engineer. He claims he neither saw nor heard the train from Chicago before it struck him, although according to his trial testimony, he was then not more than one foot distant from the nearest rail.

■ Plaintiff asserts prejudicial error in the giving and refusing to give certain instructions. Of course, the instructions must be considered as a whole.

■

Affleck v. Chicago & N. W. R. Co., 7 Cir., 253 F.2d 249, 251–252. By so considering them, we find no prejudicial error.

Plaintiff claims prejudicial error because the Court refused to permit plaintiff to introduce the pretrial deposition of Chester Pauly, or permit plaintiff to call him as an adverse witness. Pauly was a fireman who, at times, acted as engineer, and who, on the day plaintiff was injured, was acting as engineer on the diesel engine which was pulling the train which struck plaintiff.

■ Rule 43(b), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that a party may call an adverse party or an officer, director or managing agent of a corporation which is an adverse party, and interrogate him by leading questions. Defendant's employee Pauly was not an officer, director or managing agent of the defendant. The rule does not provide that any employee of an adverse party may be called adversely. Dowell, Inc. v. Jowers, 5 Cir., 182 F.2d 576.

■ There was no prejudicial error in the refusal of the trial court to permit plaintiff's counsel to read Pauly's deposition to the jury. Rule 26(d) (3) provides: "5, upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." No notice was given of plaintiff's intention to read the deposition which had been taken for discovery purposes. At the demand of the trial court, Pauly was personally present in court at the time the request was made that his deposition be read. We are unable to discover any "exceptional circumstances" within the meaning of the rule. As was well said in Napier v. Bossard, 2 Cir., 102 F.2d 467, 469: "The deposition always has been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand."

Plaintiff claims section 60 of the Illinois Practice Act applies (Ill.Rev.Stat. 1959, ch. 110, § 60). However, we are here concerned with a matter of federal procedure and the Illinois Practice Act is not applicable.

Plaintiff asserts error because his counsel was not permitted to comment to the jury upon the failure of defendant to produce and place on the witness stand the train crews of both the north-and south-bound trains which passed the intersection shortly before and at the time plaintiff was injured. We do not think this was error in a situation where defendant introduced no evidence at all, but relied on the proposition that plaintiff had failed to meet the burden of proof upon him to support the allegations of his complaint.

There remains for consideration the very important question of whether plaintiff was deprived of a jury trial in violation of the Seventh Amendment of the Constitution of the United States when the trial court *sua sponte* and over the objection of plaintiff, ordered the case to proceed to trial solely on the issue of liability.

It is true, defendant's counsel also objected, but did so on the basis that the issues in the instant case might be tried before two juries if the issues of liability and damages were tried separately. As it turned out, the issue of damages was not reached because of the jury's finding of no liability.

Plaintiff argues that the record clearly indicates the trial judge intended to submit the issue of damages to a second jury if that issue were reached. Granting this to be true, we do not face that question on this appeal. Whether a party is deprived of a jury trial as contemplated by the Seventh Amendment when some of the issues are submitted to one jury and other issues to a second jury, is a more difficult question to resolve. However, we emphasize that we do not pass on that question on this appeal.

Plaintiff argues that the application of local Rule 21 to the trial below abridged and modified his right to a jury trial as guaranteed by the Seventh Amendment. He charges such procedure changed the ancient and long-established manner of conducting trials of civil cases at common law.

The Seventh Amendment to the Constitution of the United States reads:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

Title 28 U.S.C.A. § 2072 provides that the Supreme Court shall have power to prescribe rules for the practice and procedure in the district courts and provides: "Such rules * * * shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."

Plaintiff cites and relies on Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; Miller v. American Bonding Company, 257 U.S. 304, 42 S.Ct. 98, 66 L.Ed. 250, and Hodges v. Easton, 106 U.S. 408, 1 S.Ct. 307, 27 L.Ed. 169. None of these cases deal with the question now before us. However, plaintiff cites some general statements contained in these opinions which he considers to be persuasive.

In Hodges, the Court said 106 U.S. at page 412, 1 S.Ct. at page 311: " * * * It has often been said by this court that the trial by jury is a fundamental guaranty of the rights and liberties of the people. Consequently, every reasonable presumption should be indulged against its waiver. * * *" In that case, the Supreme Court refused to order on remand that the new trial be confined to certain issues, but the court specifically declined to rule on the question of whether such requested procedure was sound.

In Patton, the Court stated that "trial by jury" meant a trial as understood and applied at common law, and that the jury should consist of twelve men, neither

more nor less, and that the verdict should be unanimous. 281 U.S. 276, 288, 50 S. Ct. 253, 254.

The decision in Miller v. American Bonding Company was not based upon the Seventh Amendment. The Court stated (257 U.S. at page 308, 42 S.Ct. at page 99) that in actions of law the general practice is to try all issues in the case at one time, and it is only in exceptional cases where there are special and persuasive reasons for departing from the practice, that distinct causes of action asserted in the same case may be made the subject of special trials. The court held that whether this may be done in any particular instance, rests largely in the court's discretion.

The Supreme Court promulgated Rule 42(b), Federal Rules of Civil Procedure. We must assume the Court had in mind the statutory admonition that "Such rules * * * shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution." Rule 42(b) reads: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

■ We hold that in the trial of the instant case, the essential character of a trial by jury was preserved. In our view, the Seventh Amendment does not require the retention of all the old forms of procedure; nor does it prohibit the introduction of new methods for ascertaining what facts are in issue. See Gasoline Products Co. Inc. v. Champlin Refining Co., 283 U.S. 494, 497–498, 51 S.Ct. 513, 75 L.Ed. 1188.

Justice Brandeis pointed out in Ex parte Peterson, 253 U.S. 300, 309–310, 40 S.Ct. 543, 546, 64 L.Ed. 919: "* * * New devices may be used to adapt the ancient institution (jury trial) to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that ultimate determination of issues of fact by the jury be not interfered with."

In Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, the Court was discussing the granting of a directed verdict. The Court said, 319 U.S. at pages 390–392, 63 S.Ct. at pages 1087, 1088: "The (Seventh) Amendment did not bind the federal courts to the exact procedural incidents or details of jury trial according to the common law in 1791, any more than it tied them to the common-law system of pleading or the specific rules of evidence then prevailing. Nor were 'the rules of the common law' then prevalent, including those relating to the procedure by which the judge regulated the jury's role on questions of fact, crystallized in a fixed and immutable system. On the contrary, they were constantly changing and developing during the late eighteenth and early nineteenth centuries. In 1791 this process already had resulted in widely divergent common-law rules on procedural matters among the states, and between them and England. * * *"

Many of the federal district courts of this country are laboring under the heavy burden of crowded trial dockets. The Northern District of Illinois is no exception. The judges of that court should be commended for their search for methods and means to expedite the disposition of cases upon their calendars. There is no doubt that in numerous cases, the severing of the issue of liability from the issue of damages will result in the shortening of the time of trial. The instant case is a good example. Without such severance, hours or even a day or two might have been consumed on the issue of damages.

It is important that the rule permitting the severance of issues be carefully administered. It is almost certain that cases will come before the court where a question as to the injuries has an important bearing on the question of liabili-

ty. In a recent case before this Court, where there had been no separation of issues, it was important to ascertain whether a flame causing an explosion resulted from a spark of static electricity near the floor, or whether it was caused by a flame from a pilot light near the top of a gas stove. The location of the burns on the face and upper part of plaintiff's body were a proper and important consideration for the jury.

As we find no error, the judgment of the District Court is

Affirmed.